**Barbara WUNSCH, Appellant,**

v.

**SUN LIFE ASSURANCE COMPANY OF CANADA, Respondent.**

**No. WD 60392.**

Missouri Court of Appeals,
Western District.

Oct. 15, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 2002.

Application for Transfer Denied
Jan. 28, 2003.

Gordon N. Myerson, Kansas City, MO, for Appellant.

Elizabeth D. Badger, Kansas City, MO, for Respondent.

Before HOWARD, P.J., and EDWIN H. SMITH and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Appellant Barbara Wunsch sued Sun Life Assurance Company of Canada, claiming that Sun Life vexatiously delayed payment of the proceeds from her husband's life insurance policy and defamed her. The trial court granted Sun Life summary judgment on both claims.

On appeal, Ms. Wunsch alleges two points of error. First, she contends that the trial court erred in granting Sun Life summary judgment on her claim of vexatious delay because the policy required only "Due Proof of death" to obtain payment, so Sun Life's refusal to pay the loss until she provided a certified death certificate was unreasonable. Second, she contends that the trial court erred in granting summary judgment to Sun Life on her defamation claim.

For the reasons set forth below, we hold that Sun Life has set forth undisputed facts that negate an essential element of Ms. Wunsch's vexatious delay claim, and the allegedly defamatory statements she complains of on appeal were made in connection with a judicial proceeding and therefore absolutely privileged. Thus, summary judgment is proper on both claims, and we affirm the trial court's judgment.

## Background

Because Ms. Wunsch's claim is one of vexatious delay, a chronology of events is helpful in explaining this case's background.

On July 20, 1999, Gary Wunsch died after a sudden illness. He had several life insurance policies, one of which was an employer-provided policy with respondent Sun Life Assurance Company of Canada. The Sun Life policy stated that upon "receipt of due proof of [Gary's] death," under a "split dollar arrangement," Ms. Wunsch was to receive $50,000 and Farmer Brothers Company, his employer, was to receive

$10,000.[1] The policy indicated that the proceeds were "payable upon receipt of Due Proof of [Mr. Wunsch's] death."

On July 27, 1999, a representative of Farmer Brothers notified Sun Life of Mr. Wunsch's death. In response, Sun Life sent claim forms to Farmer Brothers and Ms. Wunsch as the beneficiaries of Mr. Wunsch's policy.

On August 18, 1999, Ms. Wunsch returned her claim form to Sun Life. She did not list a "cause of death" as requested on the form and did not include a death certificate. Ms. Wunsch's attorney informed Sun Life that Mr. Wunsch had been bitten by a tick and the Center for Disease Control in Atlanta, Georgia, was reviewing the matter.

On August 26, 1999, Shannon Slattery, a Sun Life claims representative, spoke to Mr. Wunsch's treating physician, Dr. Geha. Dr. Geha verified Mr. Wunsch had died on July 20, 1999, but he would not issue a death certificate. Rather, he had referred the case to the Jackson County Medical Examiner, Dr. Thomas Young, to determine the cause of Mr. Wunsch's death. Ms. Slattery then contacted Dr. Young, who indicated that an autopsy was performed on July 20, 1999, and the case was "pending."

The following day, Ms. Slattery wrote a letter to Ms. Wunsch's attorney, indicating receipt of Ms. Wunsch's incomplete claim form and requesting a death certificate or,

in the alternative, a letter from the medical examiner explaining Mr. Wunsch's manner of death. She also required Farmer Brothers' completed claim form in order to proceed with payment of Mr. Wunsch's policy's proceeds.

On September 20, 1999, in response to a written inquiry from Sun Life, Dr. Young replied by fax that the cause and manner of death had not yet been determined and "homicide [could] not be ruled out." His investigation continued.

On December 7, 1999, at the repeated requests of Ms. Wunsch and her attorney, Dr. Young issued a death certificate, which indicated that the cause of death was "pending investigation." He testified in his deposition that he "wasn't ready to put pen and ink for the cause and manner of death at that point."

On December 14, 1999, Dr. Young issued a certified death certificate, which indicated that Mr. Wunsch's death resulted from "cadmium poisoning," but the manner of Mr. Wunsch's death "could not be determined."[2] Dr. Young explained that he arrived at this "conclusion" after extensive laboratory testing and investigation showed high cadmium levels in Mr. Wunsch's system but did not reveal the manner in which the cadmium got there. As was his standard practice for cases in which he could not determine a cause of death and could not rule out homicide, Dr. Young notified the Kansas City, Missouri,

---

1. Specifically, the "beneficiary" portion of the insurance policy provided that "the proceeds shall be applied to pay to Farmer Bros. Co., its successors or assigns, as its interests may appear. The balance of the proceeds shall be paid to Barbara G. Wunsch, wife or in the event of her death to the estate of the insured." The $50,000/$10,000 split was not indicated in the policy, but there appears to be no dispute on this issue.

2. Dr. Young testified in his deposition that cadmium—a heavy metal—poisoning is rare, so he consulted a forensic toxicologist concerning the cadmium levels in Mr. Wunsch's system at the time of death. Despite extensive research and consultation on the issue as well as investigation into possible sources of cadmium exposure, which is what delayed issuance of the death certificate, he was unable to arrive at any "apparent explanation" for the high levels of cadmium, so he "finally issued an undetermined" manner of death.

Police Department of his findings. A police investigation ensued.

On December 21, 1999, Ms. Wunsch mailed a copy of the death certificate to Sun Life. Sun Life received Farmer Brothers' claim form with the death certificate on December 28, 1999.[3]

On December 22, 1999, Ms. Wunsch filed her petition against Sun Life in which she alleged breach of contract and vexatious refusal to pay.[4] She subsequently amended her petition to allege vexatious refusal to pay in violation of § 375.420 [5] and common law defamation.

On May 10, 2000,[6] Sun Life filed its answer and a counterclaim for interpleader, requesting that the policy's proceeds be paid into the court until such time as a determination could be made concerning who the proper beneficiary was.[7] Specifically, Sun Life maintained that if Missouri law disqualifies Ms. Wunsch from receiving the proceeds of the policy, then Mr. Wunsch's estate might have interests in the proceeds. Ms. Wunsch opposed Sun Life's request for leave to pay the policy proceeds into the court and its request for interpleader.

On June 1, 2000, Sun Life, as an interested party, initiated a separate probate proceeding to require administration of Mr. Wunsch's estate. The probate court designated the petition as an adversary proceeding under § 472.140 and directed notice of the proceeding to be served upon Ms. Wunsch, the primary beneficiary of the policy, and the three Wunsch children, the contingent beneficiaries. The trial court appointed a personal representative of the estate, who subsequently investigated the possible claims of the estate in light of Ms. Wunsch's possible involvement in Mr. Wunsch's death. As indicated by the trial court in its December 5, 2000, Summary of Proceedings and Order of Discharge, the estate's personal representative determined that there were no facts demonstrating Ms. Wunsch's involvement and, therefore, disclaimed the estate's interest in the proceeds of the Sun Life

---

**3.** Farmer Brothers has been paid its portion of the proceeds and is not a party to this appeal.

**4.** Ms. Wunsch also made claims against General American Life Insurance Company and UNUM Provident Corporation for payment of the proceeds of the life insurance policies Mr. Wunsch also held with those companies. As explained herein, General American and UNUM subsequently filed interpleader actions, the proceeds from those policies were disbursed to Ms. Wunsch, and the companies were expressly released from any further liability. Those claims are not subject to this appeal.

**5.** Statutory references are to RSMo 1994.

**6.** Issues arose concerning the proper service of process upon Sun Life, so their response to the petition was delayed. However, Sun Life waived any challenges it may have had to service, so the issue is not before this court.

**7.** Rule 52.07 provides:

Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers no liability in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim.

To be entitled to interpleader, it must appear from the averments "that persons have claims against the party and that those claims are of such nature that the party may be exposed to double liability. Double liability in this context means exposure to double or multiple recovery for a single liability." *Gen. Am. Life Ins. Co. v. Wiest*, 567 S.W.2d 341, 344 (Mo. App.1978) (citations omitted).

policy and was dismissed from the cause. The Kansas City, Missouri, Police Department's investigation apparently revealed nothing conclusive either.[8]

On December 5, 2000, upon Ms. Wunsch's motion for summary judgment, the trial court issued a "Summary of Proceedings, Order of Discharge and Order Authorizing Partial Disbursement." Pursuant to this order, the proceeds previously deposited with the court administrator by UNUM Provident Corporation—$295,-645.62—and by General American Life Insurance Company—$87,534—were ordered disbursed to Ms. Wunsch, and those companies were released from the case. With regard to Sun Life, the trial court declined disbursement, finding, "[a]s to the proceeds deposited by Sun Life of Canada in the amount of $67,282.06, there remains a dispute concerning Barbara Wunsch's claim against Sun Life of Canada for defamation and for vexatious refusal to pay."

On February 14, 2001, Ms. Wunsch filed her Third Amended Petition for Damages, again alleging vexatious delay and defamation against Sun Life, and Sun Life subsequently filed its answer, denying the claims and asserting ten defenses.

On April 30, 2001, Sun Life filed its motion for summary judgment. The parties submitted various suggestions in support of and against the motion to the trial court.

On July 24, 2001, the trial court granted Sun Life's motion for summary judgment and issued its "Summary of Proceedings, Order Granting Summary Judgment, Discharge and Attorney Fees (Judgment)." The court found as a matter of law that Sun Life had reasonable cause to delay payment of the insurance proceeds. It further found that Ms. Wunsch "failed to plead her cause for defamation sufficiently" and, even if properly pleaded, the allegedly defamatory statements made by Sun Life were privileged. The court further ordered Sun Life discharged on the policy of insurance and allowed an attorney's fee of $4,750.

This appeal follows.[9]

## Standard of Review

Summary judgment is appropriate when the movant shows that there is no genuine dispute of material fact and he or she is entitled to judgment as a matter of law. Rule 74.04;[10] *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). As explained by the Missouri Supreme Court:

> [Appellate] review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the

8. By way of an affidavit dated July 27, 2000, Detective Sharp indicated that the investigation was still active and ongoing. It is not clear from the record whether the case has been finally closed.

9. On July 10, 2002, pursuant to the parties' joint stipulation motion, this court issued an order directing the Jackson County Court Administrator to pay out the proceeds that Sun Life had deposited pursuant to its interpleader action. An apparent, unexplained discrepancy exists concerning the amount deposited by Sun Life, $67,382.06 plus interest, and the amount held by the Administrator, $62,497.93, but that matter is not currently before this court.

10. Rule references are to the Missouri Rules of Civil Procedure (2001).

trial court's order granting summary judgment.

*Id.* at 376 (citations omitted). Although "[f]acts set forth by affidavit or otherwise in support of [Sun Life's] motion are taken as true unless contradicted by [Ms. Wunsch's] response to the summary judgment motion," we review the record and all reasonable inferences therefrom in a light most favorable to Ms. Wunsch, the party against whom judgment was entered. *Id.* Once Sun Life has met its burden under Rule 74.04, Ms. Wunsch's "*only* recourse is to show ... that one or more of the material facts shown by [Sun Life] to be above any genuine dispute is, in fact, genuinely disputed." *Id.* at 381. She can establish the existence of a "genuine issue" and defeat Sun Life's summary judgment motion by showing that the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts" and that the dispute "is real, not merely argumentative, imaginary or frivolous." *Id.* at 382.

### Vexatious Delay

 Ms. Wunsch seeks an assessment of penalties against Sun Life under § 375.420 [11] for vexatiously, willfully, and without reasonable cause refusing to make payment upon her demand in accordance with her deceased husband's life insurance policy. As a defending party moving for summary judgment, Sun Life may establish its prima facie case for summary judgment under Rule 74.04 on Ms. Wunsch's claim for vexatious delay by one or more of the following means:

(1) showing undisputed facts that negate any one of [Ms. Wunsch's] required proof elements;

(2) showing that [Ms. Wunsch], after an adequate period of discovery, [has] not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of [her] required proof elements; or

(3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by [Sun Life].

*Robinson v. Mo. State Highway & Transp. Comm'n,* 24 S.W.3d 67, 74 (Mo.App. W.D. 2000) (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381). " 'Regardless of which of these three means is employed by [Sun Life], each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.' " *Id.* (quoting *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381).

Here, the trial court found, as a matter of law, that under the "unique facts" of the case, Sun Life could reasonably require a death certificate as evidence of "Due Proof of death" under the policy as a prerequisite to payment of Mr. Wunsch's life insurance proceeds. It held that, contrary to Ms. Wunsch's claims, Sun Life acted with reasonable cause in delaying payment. Because the undisputed facts negated Ms. Wunsch's required element of proof that Sun Life acted without reasonable cause under § 375.420 in refusing payment absent a death certificate, the trial court

---

**11.** Section 375.420 RSMo 1994, provides in relevant part:

In any action against any insurance company to recover the amount of any loss under a policy of ... life ... insurance ... if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

found that Sun Life was entitled to summary judgment on her claim that it had vexatiously delayed payment of the proceeds. Although we owe the trial court no deference, we agree with its conclusion.

■ On appeal from that judgment, the crux of Ms. Wunsch's argument is that whether Sun Life was reasonable in requiring a death certificate prior to paying out the proceeds of Mr. Wunsch's life insurance policy is a question of fact that should have gone to the jury rather than being decided as a matter of law. To support submission of a vexatious refusal claim to a jury, Ms. Wunsch must provide evidence that Sun Life's "refusal to pay the loss—at the time it was asked to pay— was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Pace Props., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 918 S.W.2d 883, 888 (Mo.App. E.D.1996). Generally, as Ms. Wunsch posits, a question of reasonableness is a question of fact for the jury rather than a question of law for the court. But, it can be determined as a matter of law based upon undisputed facts. *See Thurman v. Crawford*, 652 S.W.2d 240, 242 (Mo.App. E.D.1983) (affirming a trial court's summary judgment on the basis that the hospital was reasonable, as a matter of law, in refusing to release medical records under the circumstances of the case). This is so because "[a] question of fact exists only when fair-minded people, exercising reasonable judgment, could reach different conclusions on the issue in controversy. When reasonable minds could not differ, summary judgment is properly granted." *Binkley v. Palmer*, 10 S.W.3d 166, 171 (Mo.App. E.D.1999) (citation omitted). In vexatious delay cases such as this, the issue of reasonable cause for delay is determined on a case-by-case basis on the individual facts available to the insurer at the time it was called upon

to pay. *Hopkins v. Am. Econ. Ins. Co.*, 896 S.W.2d 933, 939 (Mo.App. W.D.1995). Here, the trial court decided the issue of reasonable cause as a matter of law. On appeal, in deciding whether summary judgment is proper, we must determine whether, as a matter of law, Sun Life acted with reasonable cause when it required a death certificate as "Due Proof of death" under the policy before paying out any proceeds. In other words, we must determine whether reasonable minds could not differ on the issue of whether Sun Life acted with reasonable cause in requiring a death certificate before paying the proceeds of Mr. Wunsch's policy.

As explained below, considering the unusual circumstances surrounding Mr. Wunsch's death, we hold that Sun Life had reasonable cause, as a matter of law, to delay payment of Mr. Wunsch's policy proceeds to Ms. Wunsch. Reasonable minds could not differ, so summary judgment is proper. *Binkley*, 10 S.W.3d at 171.

Mr. Wunsch's policy with Sun Life provided that the proceeds were payable "upon receipt of Due Proof of [Mr. Wunsch's] death." In the policy's definition section, "Due Proof" is defined as "such evidence as [Sun Life] may *reasonably* require in order to establish that a benefit is due and payable." (Emphasis added.) The question of reasonableness arises yet again.

Ms. Wunsch argues that once Sun Life received verification that Mr. Wunsch was dead, after phone conversations with various people confirmed this fact, it had "due proof" under the policy. She says from that point on, Sun Life was required to pay the proceeds, and, therefore, it acted vexatiously in demanding a death certificate. We disagree. The undisputed facts show that Mr. Wunsch died of a sudden, mysterious illness. Mr. Wunsch's treating physician told Sun Life's representative

that he could not determine the cause of Mr. Wunsch's sudden demise and referred the case to Dr. Young, the medical examiner. Dr. Young performed several months of extensive tests and investigation into the cause of Mr. Wunsch's death, which he ultimately determined resulted from a rare case of "cadmium poisoning." Even though he was able to determine the cause, he was not able to determine the manner.[12] The police then took over the investigation and were still investigating the matter when Ms. Wunsch filed this action.

■ Missouri's "slayer law" provides that if a named beneficiary of a life insurance policy is convicted of killing the insured, the beneficiary is therefore "disabled" from taking the proceeds of the policy. *Lee v. Aylward,* 790 S.W.2d 462, 462 (Mo. banc 1990). Although being told that its insured was dead was proof of death, it was not "due proof" under the policy. Reasonable minds would agree that Sun Life had reasonable cause, under the circumstances, to protect any potential contingent beneficiaries and itself from duplicate liability in requiring a death certificate prior to payment of the proceeds to Ms. Wunsch.

■ Ms. Wunsch relies heavily upon the fact that despite all of the investigations done in the case, no evidence ever pointed to her as a possible suspect in her husband's death and Sun Life eventually did agree to pay. Hindsight is 20/20. As this court has explained, " '[t]he test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage.' " *Legg v. Certain Underwriters at Lloyd's of London,* 18

S.W.3d 379, 387 (Mo.App. W.D.1999) (quoting *Wood v. Safeco Ins. Co. of Am.,* 980 S.W.2d 43, 55 (Mo.App. E.D.1998)). When asked to pay the proceeds, Sun Life could, under the circumstances, reasonably require a death certificate, which it did not receive until after Ms. Wunsch had already filed suit. It is "[o]nly when the insurance company persists in its refusal to pay after becoming aware that it has no meritorious defense" that it becomes liable for vexatious delay. *Morris v. J.C. Penney Life Ins. Co.,* 895 S.W.2d 73, 76 (Mo.App. W.D. 1995). Even considering the evidence in a light most favorable to Ms. Wunsch, the evidence did not show that Sun Life so persisted. Of course, once suit was filed, Sun Life "[had] the right to defend [the] action with all the weapons at its command so long as it [had] reasonable grounds to believe its defense [was] meritorious." *Id.* at 78. Again, the issue is one of reasonableness.

We hold, as a matter of law, that Sun Life had reasonable cause to delay payment of Mr. Wunsch's policy's proceeds as it did in this case. Thus, Sun Life negated an element of Ms. Wunsch's vexatious refusal claim and is entitled to summary judgment. Ms. Wunsch's attempts to establish the existence of a "genuine issue of material fact" fail. The evidence in the record leads us to the conclusion that Ms. Wunsch's dispute is merely argumentative rather than real as required to survive summary judgment. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382.

Having so held, we do not further address Sun Life's or Ms. Wunsch's remaining arguments on this point.

Point I is denied.

---

12. Even Ms. Wunsch's counsel, in deposing Dr. Young, pointed out that "from a lay standpoint when you say poison it kind of connotes somebody poisoned someone." This lends support to a finding that Sun Life had reasonable *cause for delay.*

## Defamation

█ In her second point on appeal, Ms. Wunsch contends that the trial court erred in entering summary judgment on her defamation claim.

█ A defamation cause of action requires the plaintiff to show, "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Overcast v. Billings Mut. Ins. Co.,* 11 S.W.3d 62, 70 (Mo. banc 2000).[13] Just as with the vexatious delay claim, if Sun Life can:

(1) show[] undisputed facts that negate any one of [Ms. Wunsch's] required proof elements;

(2) show[] that [Ms. Wunsch], after an adequate period of discovery, [has] not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of [her] required proof elements; or

(3) show[] that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by [Sun Life,]

then it is entitled to judgment as a matter of law. *Robinson,* 24 S.W.3d at 74. The trial court held that the statements alleged to be defamatory by Ms. Wunsch were privileged, so Sun Life was entitled to judgment as a matter of law. Whether an allegedly defamatory statement is privileged is a question of law for the trial court, which we review *de novo.* See *Deckard v. O'Reilly Auto., Inc.,* 31 S.W.3d 6, 16 (Mo.App. W.D.2000) (discussing *de novo* review of the issue of qualified privilege).

In her point relied on, Ms. Wunsch argues:

The trial court erred in sustaining defendant's Motion for Summary Judgment on plaintiff's claim of defamation (Count II) because such statement is defamatory and not protected by either qualified privilege or absolute privilege, in that the KCMO Police Department never determined there was a homicide, the medical examiner never determined there was a homicide and the death certificate stating the cause of death as cadmium poisoning did not provide a legal basis for Sun Life to cause a probate estate to be opened for the widow's children stating that [1] "Ms. Wunsch may have murdered her husband" and [2] "she would therefore be disqualified from receiving the life insurance proceeds" knowing that those statements would be published, both to the plaintiff's children and plaintiff's family, in explaining why Sun Life had caused the

---

**13.** This court's recent opinion in *Kenney v. Wal–Mart Stores, Inc.,* No. WD 59936, 2002 WL 1991158, at *6–7, ── S.W.3d ──, ── (Mo.App. W.D. Aug.30, 2002), notes a discrepancy between the requisite proof elements of defamation involving a private figure set forth in *Overcast* and those found in the applicable MAI verdict director, MAI 23.06(1) [1980 New]. Specifically, this court held that *Overcast* requires a plaintiff alleging defamation, "as part of her burden of proof, to prove by a preponderance of the evidence that the alleged defamatory statements ... were false," while MAI 23.06(1) does not place the burden of proof on the plaintiff, but rather, the issue is an affirmative defense to be raised by the defendant as set forth in MAI 32.12 [1969 New]. *Id.* at *7, ── S.W.3d at ──. Accordingly, pursuant to Rule 83.02, this court ordered the case transferred to the Missouri Supreme Court "[b]ecause we believe that [the *Kenney*] case presents questions of general interest and importance and the existing law of defamation needs re-examining." *Id.* at *13, ── S.W.3d at ──. Because we hold that the statements in the case now before us were absolutely privileged and, therefore, summary judgment is appropriate, the issue does not arise in this case.

estate to be opened and notices sent to the children.

Although the argument portion of her brief addresses several different statements, our review is limited to those allegations of error raised in an appellant's point relied on, so we consider only the statements mentioned in her point relied on, which we have designated above by numbers in brackets. Rule 84.04(e).

■ In its answer to Ms. Wunsch's third amended petition, among the many affirmative defenses asserted by Sun Life was the defense of privilege. As explained by the Missouri Supreme Court, even if a statement may be considered defamatory, " '[t]he common law provides the defamation defendant with three general types of defenses. First, truth may always be asserted as an absolute defense. Mo. Const. art. I, § 8. Second, certain statements are absolutely privileged.... Third, other statements receive a conditional or qualified privilege.' " *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996) (quoting *Henry v. Halliburton*, 690 S.W.2d 775, 780 (Mo. banc 1985)). If the privilege is absolute, the speaker is immunized "from liability in a subsequent defamation action even if the [speaker's] statement[][was] made with malice." *Murphy v. A.A. Mathews, Div. of CRS Group Eng'rs, Inc.*, 841 S.W.2d 671, 675 (Mo. banc 1992). In other words, if Sun Life's statements are absolutely privileged, then it is entitled to judgment as a matter of law.

■ As admitted by Ms. Wunsch, the complained-of statements were made in connection with Sun Life's initiation of a separate probate proceeding to require administration of Mr. Wunsch's estate.[14] Missouri law provides "that statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body." *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 803 (Mo.App.E.D. 1997); *see also Henry*, 690 S.W.2d at 780 (explaining that "certain statements are absolutely privileged: for example, statements made during judicial proceedings" and citing further examples of the privilege in judicial proceedings at footnote 8). These statements are certainly relevant to explain to the court why it was necessary to open an estate. The statements were made in connection with a judicial proceeding, so they are absolutely privileged. *Id.*

Sun Life has shown that there is no genuine dispute that the complained-of statements were absolutely privileged, thereby supporting its properly pleaded affirmative defense and entitling it to summary judgment on this issue.

Point II is denied.

### Conclusion

As an element of her vexatious delay claim against Sun Life under § 375.420, Ms. Wunsch is required to prove that Sun Life acted without reasonable cause in refusing to make payment upon her demand in accordance with her deceased husband's life insurance policy. Sun Life has shown on the undisputed facts that it acted with reasonable cause as a matter of law in requiring a death certificate prior as "Due Proof" of her husband's death required by the policy prior to payment of the proceeds. Thus, Sun Life negated at least one of Ms. Wunsch's required proof elements and is entitled to summary judgment on that claim.

---

**14.** The pleadings of the probate matter are not a part of the record on appeal, but, in her point relied on, Ms. Wunsch refers to the statements as being made in Sun Life's pleadings therein.

Sun Life has also shown that there is no genuine dispute as the existence of each of the facts necessary to support its affirmative defense that the allegedly defamatory statements complained of on appeal by Ms. Wunsch are absolutely privileged because the statements were made in connection with a judicial proceeding. Thus, Sun Life is entitled to summary judgment on Ms. Wunsch's defamation claim, too. For these reasons, we affirm the trial court's entry of summary judgment.

SMITH and NEWTON, JJ., concur.