Helen STERLING, Appellant,

v.

RUST COMMUNICATIONS, Thomas M. Meyer, Concord Publishing House Inc., Gary W. Rust Revocable Trust, Wally Lange, Thomas L. Meyer Realtors, Thomas L. Meyer, Southeast Missourian & Gary W. Rust, Respondents.

No. ED 81757.

Missouri Court of Appeals, Eastern District, Southern Division.

Aug. 26, 2003.

Michael R. Allen, St. Louis, MO, for appellant.

Benjamin A. Lipman, St. Louis, MO, Albert Charles Lowes II, Cape Girardeau, MO, for respondents.

GEORGE W. DRAPER III, P.J.

Helen Sterling (hereinafter, "Appellant") appeals from the trial court's judgment dismissing her claims of defamation in favor of Rust Communications, Inc., et al (hereinafter, "Rust"), and Thomas M. Meyer and Thomas M. Meyer, Realtors (hereinafter and collectively, "Meyer"). Appellant claims the trial court erred in dismissing her petition because the facts pleaded in her petition and exhibits incorporated therein stated grounds for relief. Appellant alleges several articles published in the SOUTHEAST MISSOURIAN newspaper constitute a publication of defamatory statements because they identify Appellant, were false, were published with the requisite degree of fault, and damaged Ap-

pellant's reputation. The judgment of the trial court is affirmed.

The alleged defamation of Appellant arises out of four newspaper articles published in the November 1998 editions of the SOUTHEAST MISSOURIAN daily newspaper. These articles focused on an entity called Community Sweat Equity Housing (hereinafter, "CSEH") whose primary purpose was to rehabilitate housing units. Appellant resided in a home owned by CSEH, and was a paid employee of Golden Age Day Care, another tenant of CSEH.

Appellant filed this defamation action claiming Rust and Meyer were responsible for the publication of the articles. Rust and Meyer responded, filing motions to dismiss asserting the complained of statements were not defamatory as a matter of law. The trial court, without specifying a reason, entered its judgment dismissing Appellant's case with prejudice. Appellant appeals.

■ When reviewing the trial court's judgment dismissing a petition, this Court determines if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. *Wheelehan v. Dueker*, 996 S.W.2d 780, 781 (Mo.App. E.D.1999). We treat all facts alleged as true, construing allegations liberally and favorably to Appellant. *Id.* Here, the trial court did not state its grounds for the dismissal. When the trial court fails to specify its reason for dismissing a petition, we presume the trial court acted for one of the reasons stated in the motion to dismiss. *Shores v. Express Lending Services, Inc.*, 998 S.W.2d 122, 125 (Mo.App. E.D.1999). A judgment dismissing a petition will be affirmed if it can be sustained on any ground supported by the motion, regardless of whether the trial court relied on that ground. *Id.* The issue dispositive of this case is whether the complained of

statements are defamatory as a matter of law.

■ In Missouri, the elements of defamation are: (1) publication, (2) of a defamatory statement, (3) which identifies the plaintiff, (4) that is false, (5) that is published with a requisite degree of fault and (6) damages the plaintiff's reputation. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo. banc 1993). Whether language is defamatory and actionable is a question of law. *Pape v. Reither*, 918 S.W.2d 376, 379 (Mo.App. E.D.1996); *Anton v. St. Louis Suburban Newspapers*, 598 S.W.2d 493, 496 (Mo.App. E.D.1980). Trial and appellate courts are required "to determine whether the communication reasonably conveyed the meaning ascribed to it by [Appellant] and, if so, whether the meaning was defamatory in character." *Carey v. Pulitzer Publishing Co.*, 859 S.W.2d 851, 855 (Mo.App. E.D.1993).

■ The determination of whether a statement is defamatory in character only arises when the statement is an assertion or implication of fact. *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo.App. E.D.1998). Therefore, this Court must first determine whether a fact finder reasonably could conclude the statements implied assertions of fact before it can determine whether a statement has a defamatory meaning. *Id.*

■ If the statements are capable of a defamatory meaning, the court must also inquire if one or more privileges would shelter the defendant from legal action. These privileges offered by the First Amendment to the United States Constitution include the absolute privilege accorded statements of opinion, which even if made maliciously or insincerely, do not give rise to a libel cause of action. *Pape*, 918 S.W.2d at 380. The determination of whether a statement is a pure opinion or an assertion of fact is a question of law.

*Nazeri,* 860 S.W.2d at 314. The court must examine the totality of the circumstances to determine whether the ordinary reader would have treated the statement as opinion. *Henry v. Halliburton,* 690 S.W.2d 775, 788 (Mo. banc 1985); *Diez v. Pearson,* 834 S.W.2d 250, 252 (Mo.App. E.D.1992).

 In *Nazeri,* the Missouri Supreme Court set forth the test to be used in determining whether, as a matter of law, an allegedly defamatory statement is reasonably capable of a defamatory meaning. The *Nazeri* test consists of two standards, which "while ... not absolutely consistent ... should be read together." *Nazeri* at 311. The first standard requires that the alleged defamatory words "be stripped of any pleaded innuendo ... and construed in their most innocent sense." *Id.* The second standard requires that the words "must be considered in context, giving them their plain and ordinarily understood meaning." *Id.* That is, the words "are to be taken in the sense which is most obvious and natural and according to the ideas they are calculated to convey to those to whom they are addressed." *Id.*

Appellant's only point on appeal alleges several articles published in the SOUTHEAST MISSOURIAN newspaper constituted a publication of defamatory statements which identify her. Appellant claims the statements were false and published with the requisite degree of fault which damaged Appellant's reputation. The alleged defamatory statements Appellant identifies from the SOUTHEAST MISSOURIAN are:

On November 20, 1998:

'Some of the tenants did not make any rent payments, which crippled the overall program. In this business, you run across some deadbeats.'

Thomas M. Meyer

Meyer, who worked frequently with rental property said last week that slow payments are a normal expectation of landlords, even saying that some tenants are professional delinquents.

He confirmed that [Appellant,] who lives at the property at 227 S. Pacific was slow on payments, but that payments were always eventually received. He calls her action [consistent with other tenants].

But at the end of September, 1997, Meyer, who was still managing the property for CSEH, sent a letter to [Appellant] reminding her that she was late in her rent payments. He told her in the letter that when her rent came due on the first of October, she would owe just under $1,000, about three month's rent.

Appellant extracted the following phrases from the November 21, 1998, article:

Community Sweat Equity Housing Corp and Golden Age Day Care Center was run by the same people

Common bonds and the personnel running both programs are intertwined also as depicted below:

Community Sweat Equity Housing Corporation

Golden Age Day Care Center

[Appellant] renting home owned by Community Sweat Equity Corporation

Picture–Appellant–Programmer

Appellant extracted the following phrases from the November 22, 1998, article:

It was almost like a scam.

It looked real screwy.

Virtually nothing was going on

On November 23, 1998, article identified Appellant as a tenant.

Also included in the November 21, 1998 article was a picture of Appellant with the title of programmer.

 The complained of statements therefore do not satisfy the first part of the *Nazeri* test because when "stripped of any pleaded innuendo" and "construed in their most innocent sense" these words clearly are not defamatory in that they are either true, opinions, or are not of and concerning Appellant. *Nazeri*, 860 S.W.2d at 314. The statements, which refer to "deadbeats" and "professional delinquents", are general statements by a real estate professional regarding the problems inherent in the business of property rental. In order to be defamatory, a statement "must be clear as to the person addressed" *Pape*, 918 S.W.2d at 380. Because the statements are not of and concerning Appellant, they cannot form the basis of her defamation action.

Next, a careful reading of the words in the context of the November articles as a whole also fails to satisfy the second part of the *Nazeri* test. We find the words "considered in context, giving them their plain and ordinarily understood meaning." would most obviously and naturally be interpreted as opinions which, even if false, have not been published with the requisite degree of fault required for a prima facie defamation action pursuant to *Nazeri.*

 The statement confirming that Appellant was slow on payments, but that payments were always eventually received, is a fact supported by Appellant's petition. Falsity is an element of a prima facie defamation claim. Furthermore, the statement calls Appellant's actions "consistent with other tenants." When "considered in context, and given their plain and ordinarily understood meaning," these words clearly are either true, or opinions which although embarrassing, are not defamatory. The complained of statements, therefore, do not satisfy the *Nazeri* test.

The trial court did not err in dismissing Appellant's petition because the com-plained of statements in this cause are not defamatory as a matter of law. Thus, the judgment of the trial court is affirmed.

GLENN A. NORTON and BOOKER T. SHAW, JJ., concur.